U.S. Bankruptcy Court
District of Idaho
Filed: December 15, 2004
at 3:00 p.m.
By: JCO

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| NEIL MELVIN HODGES, | ) | Case No. 04-03275 |
| | ) | |
| Debtor. | ) | MEMORANDUM OF |
| | ) | DECISION |
| | ) | |

On October 19, chapter 7 debtor Neil Hodges ("Debtor") filed a motion for sanctions under § 362(h) through his counsel Kelly Beeman ("Beeman"). *See* Doc. No. 7 ("Motion"). The Motion is brought against creditor "Platinum Plus for Business" ("Creditor"). *Id.* at 1. The Motion, and Debtor's related affidavit, Doc. No. 8, assert that Debtor received four collection calls and that Debtor should be reimbursed his actual damages, including out-of-pocket expenses and his attorneys' fees and costs, and that punitive damages should be assessed. *Id.*[1]

A hearing was held on the Motion on November 1, 2004. Debtor appeared,

---

[1] Beeman's practice of filing § 362(h) motions against creditors using form pleadings, identical to those involved here, was addressed in part in *In re Risner*, Case No. 04-2310, Doc. No. 42 (Bankr. D. Idaho December 10, 2004) (Mem. Decision) (hereafter "*Risner*").

MEMORANDUM OF DECISION - 1

as did Beeman.  No appearance was made on behalf of Creditor.

Debtor testified that he had received eight to ten telephone collection calls, and four or five bills or other written demands for payment, as of the date of hearing.  He testified that, in each telephone call, he provided information concerning his bankruptcy filing, and advised the party on the phone to contact his attorney, Beeman.  The testimony indicates that several of these calls were subsequent to the filing of the Motion and supporting affidavit.

Debtor further testified that he provided Beeman with the toll-free number the telephone collectors gave to him.  Beeman indicated he never called this number or otherwise attempted to communicate with Creditor but, instead, filed the Motion.

The Court took the matter under advisement at the conclusion of the hearing.

## DISCUSSION AND DISPOSITION

### A.  Service

A motion for § 362(h) relief creates a contested matter.  *See Risner*, Doc. No. 26 at *5 (discussing Fed. R. Bankr. P. 9013 and 9014).  Under Rule 9014(b), that motion must be served in the manner provided for in Fed. R. Bankr. P. 7004. *Id.*  The certificate of service in this case asserts that the Motion was served on:

> MBNA America Bank (Delaware)
> Bank Card Services

MEMORANDUM OF DECISION - 2

Attn: Law Dept.
Registered Agent for MBNA America/Platinum Plus for Business
1100 North King St.
Wilmington, DE 19884-0124
Via: Certified Mail with Return Receipt Requested

Doc. No. 7 at 4. Beeman told the Court at hearing that Creditor provided this
address to his paralegal, who had contacted Creditor by telephone.[2]

Beeman further asserted in the certificate of service filed with the Court that
the "Law Department" of MBNA America, Bank Card Services is the "registered
agent" of Creditor. Based on this representation and absent contest, the Court will
find proper service on Creditor under Rule 7004(b)(3). It therefore turns to the
merits of Debtor's Motion.

### B. Stay violation

Debtor alleges Creditor violated the fundamental protections afforded him
by the automatic stay of § 362(a).

> The reach of the automatic stay is broad. It prohibits any act
> taken against the debtor or to recover a claim against the debtor. The
> stay requires the creditor to maintain the status quo ante and to
> remediate acts taken in ignorance of the stay.

*In re Aughenbaugh*, 02.4 I.B.C.R. 157, 158 (Bankr. D. Idaho 2002) (quoting

*Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 343 (9th Cir. BAP

---

[2] It appears clear from Beeman's representations that his paralegal's telephone contact
with Creditor was solely to determine an address for purposes of service, and that neither Beeman
nor anyone in his office attempted to speak to Creditor to request cessation of the billings or the
collection calls.

MEMORANDUM OF DECISION - 3

1994)); *see also  Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002); *In re Wiersma*, 03.1 I.B.C.R. 42, 44 (Bankr. D. Idaho 2003) ("Respect by all involved for the automatic stay is critical to the fair and effective functioning of the reorganization process.").

Here, the undisputed evidence establishes that Creditor attempted to collect a pre-petition debt not once, but a minimum of twelve times (eight telephone calls and four billings).  Such collection efforts violate the § 362(a) automatic stay.  *See* § 362(a)(6).

## C.  Willfulness

The protections embodied in the stay are enforced through § 362(h), which provides:

> (h)   An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Not all stay violations are actionable.  To fall within § 362(h), they must be "willful" violations.  This Court stated in *In re Andrus*, 04.3 I.B.C.R. 137, 2004 WL 2216493 (Bankr. D. Idaho 2004):

> Once the creditor or actor learns of the bankruptcy filing, any actions intentionally taken thereafter are "willful" within the contemplation of § 362(h). *Eskanos & Adler* , 309 F.3d at 1215 ("A willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional.") (citing *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992)); [*In re*] *Jacobson*, 03.2 I.B.C.R. [119, 121 (Bankr. D. Idaho 2003)]

MEMORANDUM OF DECISION - 4

(citations omitted). It is, thus, the intent to act while on notice of the pendency of the bankruptcy case, not a specific intent to violate the stay, that is material. *Associated Credit Servs., Inc. v. Campion (In re Campion)*, 294 B.R. 313 (9th Cir. BAP 2003) states:

> There need be no proof of specific intent to violate the stay or to injure. To the contrary, a good faith belief that the stay is not being violated "is not relevant to whether the act was 'willful' or whether compensation must be awarded."

294 B.R. at 316 (footnote and citations omitted); *see also Jacobson*, 03.2 I.B.C.R. at 121 ("Specific intent to violate the stay is not a required element in finding a willful violation.") (citing *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224 (9th Cir. 1989)); *Augenbaugh*, 02.4 I.B.C.R. at 163.

04.3 I.B.C.R. at 141 (footnote omitted).

Here, Debtor listed Creditor on his schedules. *See* Doc. No. 1 at schedule F. The Bankruptcy Noticing Center's certificate of service shows that notice of Debtor's case filing was served on Creditor. *See* Docket Entry of 9/20/2004. In addition to this notice of the bankruptcy, Debtor testified that during each phone call, he informed Creditor's employees of the bankruptcy and directed them to contact Beeman. Notwithstanding such notice and knowledge of Debtor's bankruptcy, Creditor continued its collection efforts. Therefore, Creditor's actions were willful.

### D. Actual damages

An award of actual damages for proven injuries caused by a creditor's willful stay violation is mandatory. *See* § 362(h) ("individual injured . . . *shall*

MEMORANDUM OF DECISION - 5

recover actual damages"). "'Actual damages' under § 362(h) require a finding of 'actual injury'." *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 8 n.8 (9th Cir. BAP 2002). "Generally, actual damages include compensatory damages, as opposed to noneconomic or punitive damages, and are defined as '[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.'" *Id.* at 9 n.9. Debtor must affirmatively prove the amount of any actual damages sought pursuant to § 362(h). *Jacobson*, 03.2 I.B.C.R. at 121.

### 1. Debtor's time and expense

Here, Debtor submitted an affidavit stating that he spoke with Beeman four times, for 15 minutes each time, concerning Creditor's four collection calls. He also stated that his time was worth $11.38 an hour, and that he "lost revenues of $11.38 in addition to the amount [of time it took to make the phone calls]". Doc. No. 8 at 2. On the stand, Debtor elaborated, stating that he spoke further with Beeman after Creditor made additional contacts seeking to collect the pre-petition debt.

The affidavit's assertion that each of the first four contacts between Debtor and Beeman took 15 minutes is not persuasive. First, this is a stock allegation in a form pleading used by Beeman in numerous § 362(h) motions. The Court does not accept that each of Beeman's debtors takes 15 minutes in each and every call made to him regarding post-petition creditor contact. Second, Debtor admitted at

MEMORANDUM OF DECISION - 6

hearing under questioning by the Court that these conversations did not take that long. He also indicated that, as the collection calls continued, each contact with Beeman took less time than the one before (*i.e.*, Debtor simply advised Beeman that "they did it again.")

Beeman explained that he estimated the times for the first four conversations when he prepared Debtor's affidavit because Debtor could not remember the exact number of minutes it took to convey the relevant information. The explanation is not very compelling, given the use of the standardized form with identical 15 minute "estimates" for this and other debtors, and given Debtor's testimony at hearing that the time was less than 15 minutes. Moreover, an "estimate" does not establish *actual* time spent dealing with a creditor's stay violation. This creates problems in finding and awarding actual damages.

Nevertheless, it is obvious from Debtor's courtroom testimony that he spent some personal time dealing with his counsel and attempting to get this stay violation resolved. The affidavit asserts that he suffered an out-of-pocket cost for such time. *See* Doc. No. 8 at 2.[3] This supports an award of actual damages. The

---

[3] The form affidavits Beeman prepares for his debtors all indicate that contacting counsel costs the debtors money, and each sets forth an "hourly rate" for that debtor's time. That each debtor is forced to miss work and is docked pay, or should otherwise be compensated at an "hourly rate" for talking to their lawyer, is not necessarily a given. While not contested in this case, future assertions of such "actual damages" may be challenged.

MEMORANDUM OF DECISION - 7

Court finds Debtor incurred $22.76 in actual damages.[4]

### 2. Debtor's attorney's fees

Debtor's affidavit alleges total damages of $372.76. Of that amount, $350.00 is attorneys' fees. Debtor states:

> My attorney, Kelly l. Beeman, informs me that he spent two (2) hours researching, preparing for and appearing in this case at an hourly rate of $175.00 per hour.

Doc. No. 8 at 2.

Actual damages may include, or consist entirely of, attorneys' fees and costs. *Jacobson*, 03.2 I.B.C.R. at 121 (citing *Eskanos & Adler*, 309 F.3d at 1215-16). However, the attorneys' fees must be shown to be reasonable. *See Roman*, 283 B.R. at 11 (endorsing "the use of the principles used in § 330 as a guide for awarding attorneys' fees under § 362(h)."); *Risner*, Doc. No. 42 at *11-*18. As noted in *Risner*, the Court is required to determine that legal services are "actually" performed and that the charges for such services are "reasonable" in amount. *Risner*, Doc. No. 42 at *17.

Here, as in *Risner*, the Court does not have any competent evidence

---

[4] While the amount of time spent in conversation with Beeman was not precisely established, Debtor testified that he called Beeman after each dunning by Creditor. With at least eight telephone contacts and four written demands, Debtor could easily have spent an hour contacting Beeman, and an additional hour appearing and testifying at the November 1 hearing. Debtor's affidavit indicates he lost $11.38 per hour in doing so (though without making clear that he was required to take noncompensable time off work). Even though a "lackluster" showing, *see In re McCain*, Case No. 03-04624, Doc. No. 54 at 3 (Bankr. D. Idaho Sept. 27, 2004), the Court finds sufficient proof of actual damages.

MEMORANDUM OF DECISION - 8

regarding the actual amount of attorney time expended. Debtor's affidavit concerning what his attorney told him is hearsay. Even if this statement was admissible, it is not determinative. The one sentence assertion that it took two hours of attorney time[5] to bring the Motion before the Court is not sufficient for the Court to determine that such time was actually spent. As discussed in *Risner*, Beeman uses and files form pleadings. Not only is the "standard" two hours alleged in virtually every debtor affidavit, reducing the weight the Court can give such assertion, these forms require minimal attorney time to prepare.

Moreover, the Court has no evidence supporting the reasonableness of this time, assuming it was in fact spent. Beeman did not attempt to contact Creditor prior to commencing litigation, and admitted as much during hearing. The Court can never know if such an effort would have eliminated the need for the present litigation.

Absent sufficient proof as to the actual time spent and as to the reasonableness of such services, the Court cannot, and will not, award attorneys' fees.

---

[5] The rate asserted in the affidavit herein was $175.00 per hour. In *Risner*, it was $150.00 per hour. The Court expressed in *Risner* reservation about the reasonableness of this rate given the nature of the work performed. Doc. No. 42 at 13 n.13. Doubts persist but, as in *Risner*, the Court need not address the question further given the conclusion that no fees are awarded.

MEMORANDUM OF DECISION - 9

## E.  Punitive damages

### 1.  Standards

In addition to actual damages, Debtor's Motion requests punitive damages.

Section 362(h) allows the Court to award punitive damages "in appropriate

circumstances."  The Code does not specify what circumstances warrant the

imposition of punitive sanctions, however case law does.  The Court must consider

"(1) the nature of [Creditor's] acts; (2) the amount of the compensatory damages

awarded, and (3) the wealth of [Creditor]."  *Kaufman v. Monte (In re Kaufman)*,

315 B.R. 858, 869 (Bankr. N.D. Cal. 2004) (quoting *Prof'l Seminar Consultants v.*

*Sino Am. Tech. Exch. Council, Inc.,* 727 F.2d 1470, 1473 (9th Cir. 1984)).

### a.  Creditor's conduct

As *Andrus* notes, a debtor must show that the creditor has demonstrated "a

reckless or callous disregard of the law."  04.3 I.B.C.R. at 145 (quoting *Wiersma*,

03.1 I.B.C.R. at 44).  "Both *Wiersma* and *Aughenbaugh* recognized that, under

*Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 590 (9th Cir. BAP 1995),

punitive damages are proper if conduct was 'malicious, wanton or oppressive.'" *Id.*

Also, if a debtor proves that a creditor's conduct amounted to "egregious,

intentional misconduct," the Court may award punitive damages.  *Id.* (citing

*Stinson v. Bi-Rite Rest. Supply, Inc. (In re Stinson)*, 295 B.R. 109, 122 (9th Cir.

BAP 2003)).

MEMORANDUM OF DECISION - 10

In this case, the evidence shows Creditor was made aware of the bankruptcy but continued to harass Debtor for payment. During each of at least eight telephone collection calls, Debtor informed Creditor of the bankruptcy and advised Creditor to contact Beeman. The repetitious collection requests, after being informed on more than one occasion of Debtor's bankruptcy, demonstrates a callous disregard for the automatic stay.

### b. Amount of compensatory damages

A primary purpose for imposing punitive damages is deterrence. "The award serves to dissuade the actor(s) from repeating the conduct, and operates to caution others not to engage in similar behavior." *Andrus*, 03.4 I.B.C.R. at 145 (citing *Wiersma*, 03.1 I.B.C.R. at 44). Thus, the award should be sufficient to serve that purpose. But it must also be proportional to the award of compensatory damages. *Id.* (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 582 (1996); and *Progressive Motors, Inc. v. Frazier*, 220 B.R. 476, 478-79 (D. Utah 1998)).

In this case, the evidence established only $22.76 in actual damages.

### c. Creditor's wealth

Debtor provided no evidence regarding Creditor's wealth.

### 2. Award

The Court concludes that punitive damages of $225.00 will be assessed. This award recognizes that Creditor's repetitive collection efforts were oppressive

MEMORANDUM OF DECISION - 11

to Debtor and reflected a callous or reckless disregard of § 362(a). But it also

recognizes the rest of the standards established by the precedent, which inform and

guide the Court's discretion.

## CONCLUSION

For the reasons stated above, Debtors motion for sanctions, Doc. No. 7, will

be granted in part. Debtor will be awarded $22.76 in actual damages and $225.00

in punitive damages. The Court will not award attorneys' fees.

Debtor shall provide an appropriate form of order.

Dated this 15th day of December, 2004.

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 12

AO 72A
(Rev. 8/82)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served by the method indicated below, a true copy of the document to which this certificate is attached, to the following named person(s) at the following address(es), on the date shown below:

DATED: December 15, 2004

Case No. 04-03275 (Neil M. Hodges)

Office of the U.S. Trustee
MK Central Plaza
720 Park Blvd., Suite 220
Boise, ID 83712
jeff.g.howe@usdoj.gov
gary.mcclendon@usdoj.gov
      ☐ U.S. Mail      ☐ Facsimile      ✓ Email

Kelly I. Beeman
BEEMAN LAW OFFICES
710 1/2 W. Franklin, Suite 201
Boise, ID 83702
assurance@beemangroup.org
      ☐ U.S. Mail      ☐ Facsimile      ✓ Email

Lois K. Murphy
P.O. Box 741
Meridian, ID 83680-0741
loismurphy@cableone.net
      ☐ U.S. Mail      ☐ Facsimile      ✓ Email

Neil M. Hodges
1725 W. Pine Avenue
Meridian, ID 83642
      ✓ U.S. Mail      ☐ Facsimile      ☐ Email

MBNA America Bank
Attn: Law Department
1100 N. King St.
Wilmington, DE 19884-0124
      ✓ U.S. Mail      ☐ Facsimile      ☐ Email

*Ann B. Canderan*

Ann B. Canderan
Judicial Assistant to Judge Myers

Note to Email service: A PDF version of the above decision/order was electronically transmitted to the parties indicated above. Email service is provided as a courtesy only upon request of a party. To review an electronic image of the original of this document, or to subscribe for email service of future decisions/orders from the Bankruptcy Judge, please access the Court's Internet web site, www.id.uscourts.gov.

MEMORANDUM OF DECISION - 13